**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS EDDY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07cv575 |
| | ) | **Electronic Filing** |
| **THOMAS CORBETT,** Attorney General | ) | |
| of the Commonwealth of Pennsylvania, | ) | |
| and **SUSAN MALONE** (Chief Deputy | ) | |
| Attorney General), | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

September 14, 2009

## I.   INTRODUCTION

Plaintiff, Thomas Eddy ("Eddy" or "Plaintiff") filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants, Attorney General Thomas Corbett ("Corbett" or the "AG") and Chief Deputy Attorney General Susan Malone ("Malone")(collectively "Defendants") violated his rights under the First Amendment to the Constitution of the United States by terminating his employment in retaliation for speaking out against what he regarded as age discrimination and illegal political targeting in the staffing of attorneys in the AG's office.  Defendants have filed a motion for summary judgment, Plaintiff has responded and the motion is now before the Court.

## II.   STATEMENT OF THE CASE

Corbett was elected Attorney General of the Commonwealth of Pennsylvania in November of 2004, and took office on January 18, 2005.  Corbett Decl. ¶ 3.  In late January of 2005, Corbett met with the Civil Law Division of the Office of the Attorney General (the "OAG") in Pittsburgh to discuss his concerns regarding certain performance issues. Corbett Decl. ¶ 4; Eddy Aff. ¶ 1.  Corbett alleges that he explained to all the employees the importance of strict adherence to office policies and procedures with respect to office hours and leave policy.

Corbett Decl. ¶ 5.  Corbett also remarked about his intent to sift out the "dead wood" in the office, but as long as employees were doing their jobs, they had nothing to worry about.  Eddy Aff. ¶ 5.

Eddy was hired as a Deputy Attorney General ("DAG") on November 1, 2000,  and was assigned to the civil litigation section in Pittsburgh, Pennsylvania.  Rovelli Decl. ¶ 4.  On October 13, 2003, Eddy was promoted to DAG IV, the highest classification for a staff attorney in the OAG. Rovelli Decl. ¶ 6.  DAG IV is a position which involves the performance of highly advanced, independent professional work rendering advice and legal services on matters of significant scope, importance and complexity.  As a litigator, Eddy was expected to work with limited supervision, and his independent efforts and professional decisions could have significant impact on the OAG.  *See* Rovelli Decl. Exhibit A.

Susan Malone, the Chief Deputy Attorney General for the Western Region Office of the OAG, was directed by Corbett to confirm reports he had received about the disregard of the office hours and leave policy, lack of motivation and performance issues by several attorneys and staff members in the Civil Law Division of the Pittsburgh office.  Malone Decl. ¶ 4.  At a meeting with Corbett and members of his staff in April of 2005, Malone indicated that employees in the Civil Division of the Pittsburgh office, including Eddy, continued to report to work late, leave early and abuse the leave policy.  Malone Decl. ¶ 5.  The AG directed Louis J. Rovelli[1]  ("Rovelli") and Malone to conduct individual counseling sessions in the Pittsburgh office on April 29, 2005.  Malone Decl. ¶ 7; Rovelli Decl. ¶ 9.

At the April 29 meetings, both Rovelli and Malone indicate that all of the attorneys counseled, except Eddy, accepted the counseling professionally and indicated they would adhere to established hour and leave policies. Malone Decl. ¶ 8; Rovelli Decl. ¶ 10.  Eddy admits that he felt "compelled to express [his] opposition to the policies implemented by [the AG] . . .", and

---

[1]    Rovelli was the Executive Deputy Attorney General and Director of the Civil Law Division for the OAG, and has held that position since April 15, 1987. Rovelli Decl. ¶ 1.

that he was forceful, but respectful,[2] in his discussions with Malone and Rovelli. Eddy Aff. ¶¶ 17 and 24.  Eddy further stated that Corbett had demoralized the Pittsburgh office and that the staff could no longer trust him.  Plaintiff's Response to Defendants' Concise Statement of Material Facts ("Pl. Res. To Def. CSMF") ¶ 15.  Eddy further alleges that he expressed his deep concern regarding the dishonesty of the AG and his staff concerning what Eddy believed to be age discrimination in the termination of older employees[3] and political firings. Eddy Aff. ¶¶ 17, 18, 19 and 23.  Both Malone and Rovelli, however, deny Eddy made any comments regarding age discrimination or political motivation in the office staffing decisions. Malone Decl. ¶¶ 13-15; Rovelli Decl. ¶¶ 14-16.

Malone and Rovelli attended a meeting with the AG and his executive staff on May 3, 2005, at which both Eddy's behavior and commentary at the April 29th meeting were discussed. Malone Decl. ¶ 17; Rovelli Decl. ¶ 18.  At the meeting, the AG decided to terminate Eddy. Corbett Decl. ¶ 13.  The consensus among the members of the executive staff was that Eddy did not exhibit the requisite judgment, temperament, loyalty or maturity for his senior position with the OAG. Corbett Decl. ¶ 12; Malone Decl.¶ 18; Rovelli Decl. ¶ 19.

Malone returned to Pittsburgh on May 4, 2005, and asked Eddy to report to her office on May 6, 2005. Malone Decl.¶ 18.  John Piasecki, Special Agent in the Criminal Division of the OAG ("Piasecki"), was advised that a civil attorney with the Pittsburgh office was to be terminated on the morning of May 6, and he was to report to Malone's office that morning, remain outside her office while she met with the attorney, and escort the attorney from the premises thereafter. Piasecki Decl. ¶¶ 2 and 3.  At the May 6th meeting, Malone advised Eddy

---

[2]   Both Rovelli and Malone allege that Eddy was "agitated and hostile" when he entered the meeting and launched into a tirade accusing the AG of being deceitful and ruining office morale. Malone Decl. ¶ 10; Rovelli Decl. ¶ 11.

[3]   Eddy identifies but one employee, Robert Englesberg, who he believes was terminated because of his age (Eddy Aff. ¶¶ 15 and 17), and identifies no employee that he contends was the victim of a political firing.

that the AG had decided to terminate his employment. Malone Decl.¶ 22.  Eddy admits that

Malone advised him of his termination and he was escorted from the office.  Pl. Res. To Def.

CSMF ¶¶ 30 and 32.


III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no

genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of

law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine

and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the

non-moving party and one which is essential to establishing the claim.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court

is not permitted to weigh the evidence or to make credibility determinations, but is limited to

deciding whether there are any disputed issues and, if there are, whether they are both genuine

and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the

party opposing summary judgment and all reasonable inferences from the facts must be drawn in

favor of that party as well.  *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d

177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts*. See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of

the Rule, the nonmoving party must come forward with "specific facts showing that there is a

genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on

unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a

summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond

"by pointing to sufficient cognizable evidence to create material issues of fact concerning every

element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.   DISCUSSION**

Eddy has alleged a retaliation claim against Defendants pursuant to 42 U.S.C. § 1983, for allegedly retaliating against him for exercising his First Amendment rights. The Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected rights,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)).  To state a *prima facie* claim of retaliation, Eddy must show (1) "that [plaintiff] engaged in protected activity; (2) that the defendant responded with retaliation; and (3) that the protected activity was the cause of the retaliation." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).  Whether the activity is protected is a question of law, while the remaining inquiries are questions of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

The Supreme Court has held that a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 570 (1968).  A public employer may not discharge an employee for a reason that infringes upon that employee's constitutionally protected interest in the freedom of speech. *Rankin v. McPherson*, 483 U.S. 378, 383 (1987).  The Court recognized, however, that public employers have the same concern for efficiency, as well as the need to review and evaluate employees as private employers have, and must ensure that the actions of its employees do not interfere with the performance of public functions. *Id.* at 383-89.  A public employee's speech is protected activity under the First Amendment when (1) in making it, the employee

5

spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-242 (3d Cir. 2006)(quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

In order for Eddy to establish an unconstitutional firing, he must establish that his speech was protected, and that it was a motivating factor in the alleged retaliatory dismissal. *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008). The initial inquiry, whether Eddy's speech was protected, is solely a question of law. *Id.* To determine if Eddy's speech is protected, this Court must first decide if such speech implicates a matter of public concern, and if so, then "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer], in promoting the efficiency of the public services it performs through its employee." *Pickering v. Bd. of Educ.*, 391 U.S. at 568; *see also Connick v. Myers*, 461 U.S. 138, 140 (1983).

An employee's speech involves a matter of public concern if it is fairly related to political, social, or other community concerns. *Hill v. Borough of Kutztown*, 455 F.3d at 243 n.25. A court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. at 147-148. In the record currently before the Court, there is a dispute regarding whether Eddy actually addressed matters of a public concern prior to his termination. Defendants argue that no such matters were raised during the April 29th meeting as alleged by Eddy. Considering the facts in the light most favorable to Eddy, the Court finds that, even if Eddy merely touched tangentially on such issues during the meeting, age discrimination and politically motivated terminations occurring in a public agency are matters of public concern[4].

---

[4]    Based on this finding, the Court finds no need to determine whether Eddy's termination actually occurred before or after he submitted his self-serving letter dated May 5, 2005, to Malone.

6

The Court's determination of a government-employer's countervailing interest at this initial step requires consideration of whether the employee is a policymaker under the *Elrod/Branti* line of cases. This is because the "government's interest in appointing politically loyal employees to policymaking positions converges with its interest in running an efficient workplace." *Curinga v. City of Clairton*, 357 F.3d 305, 312 (3d Cir. 2004).  In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court set forth a separate analysis for politically motivated discharges of public employees, and restricted the dismissal of public employees for partisan reasons to protect the employees' freedom of political belief and association. *Id.* at 357-358 (Brennan, J., plurality opinion). The Court, however, allowed dismissals based on political affiliation for "policymaking" positions finding that policymaking employees with different political affiliations or orientations could thwart the will of the electorate and block the implementation of new policies. *Id.* at 367.  In *Branti v. Finkel*, 445 U.S. 507 (1980), the Court refined the policymaker exception holding "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

If, using the teachings of the Supreme Court in *Elrod* and *Branti*, this Court finds Eddy to be a policymaker, then the *Pickering/Connick* balancing test tips decidedly in the employer's favor. At one end of the spectrum is the Sixth Circuit's decision that  held as a matter of law that the second step of the *Pickering/Connick* balancing test favors the governmental employer "where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views . . . ." *Rose v. Stephens*, 291 F.3d 917 (6th Cir. 2002). Commenting on the Sixth Circuit's decision in *Rose*, the Court of Appeals for the Third Circuit was unable to go that far, but stated, "whether or not this can be decided as a matter of law, the government's interest in these kinds of cases is likely dispositive." *Curinga v. City of Clairton*, 357 F.3d at 312 n.5.

Plaintiff argues that cases in which the employee was found to be a policymaker are inapposite to the case at bar indicating to the Court that Plaintiff believes he is not a policymaker under *Elrod/Branti*. This Court disagrees. In *Tomalis v. Office of Attorney Gen. of the Commonwealth of Pa.*, 45 Fed. Appx. 139 (3d Cir. 2002), an unpublished Third Circuit opinion, plaintiff, a DAG IV in Pennsylvania's OAG, brought a § 1983 claim in which he alleged that he was terminated both because of his political affiliation and in retaliation for speaking out on a matter of public concern. *Id.* at 141. The Third Circuit first determined that under *Elrod/Branti* the plaintiff was a policymaker[5], and therefore, could be terminated for his political affiliation. *Id.*

Proceeding with its analysis of plaintiff's First Amendment retaliation claim, the Third Circuit found plaintiff's status as a policymaker relevant to its decision to dismiss the retaliation claim under *Pickering/Connick*. The court stated:

> [The Attorney General] has a reasonably greater cause for concern when direct public criticism of him comes from one in a confidential position. [He] cannot implement his goals and policies alone. Rather, he does so only through the individual attorneys that represent him in matters on a day-to-day basis. For example, as explained above, [the plaintiff's] position thrusts him into an appellate court to speak on [the Attorney General's] behalf in major pieces of tax litigation that can have long-lasting, state-wide effects on policy and other tax payers. As such, [the Attorney General] has a vested interest in [the plaintiff's] loyalty, confidence and judgment. . . . The employer does not have "to allow events to unfold to the extent that the disruption of the office and the destruction of the working relationships is manifest before taking action."

*Tomalis*, 45 Fed. Appx. at 145 (quoting *Connick v. Myers*, 461 U.S. at 152). The court concluded that the Attorney General's interest in promoting the "efficiency of the public service" performed by the OAG outweighed the plaintiff's right to speak on issues he found important to address. *Tomalis*, 45 Fed. Appx. at 145.

-------

[5]   The court described Tomalis' position as "highly responsible," and stated that the position of DAG IV required the rendering of "legal services and advice on matters of significant scope, importance, and complexity." Further, the job description outlined the potential need for the person holding that position to assume a supervisory role. *Tomalis*, 45 Fed. Appx. at 141.

8

Using the Third Circuit's analysis in *Tomalis* as a guide, this Court also finds that Eddy was a policymaker in his position as a DAG IV with the Pennsylvania OAG. Courts across the country have found a wide array of government attorneys to be policymaking or confidential employees. *See, e.g., Aucoin v. Haney*, 306 F.3d 268 (5th Cir. 2002) (assistant district attorney); *Biggs v. Best, Best & Krieger*, 189 F.3d 989 (9th Cir. 1999) (private associate attorney working under partner contracted by deputy city attorney); *Vona v. County of Niagara*, 119 F.3d 201 (2d Cir. 1997) (assistant attorneys to county social services department); *Bauer v. Bosley*, 802 F.2d 1058 (8th Cir. 1986) (staff legal assistant in office of clerk of county court); *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981) (city solicitor and assistant city solicitors); *see also Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996)(noting that a DAG could be fired at any time by the Attorney General, that a DAG often appeared in proceedings representing the Attorney General, and that a DAG had statutory authority to be delegated any power of the attorney general, regardless of that DAG's specific assignment at any given time). Further, the Third Circuit has held on at least three other occasions that government lawyers are policymakers under *Elrod/Branti*. *See Wetzel v. Tucker*, 139 F.3d 380 (3d Cir. 1998) (solicitor for a county agency); *Mummau v. Ranck*, 687 F.2d 9 (3d Cir. 1982) (assistant district attorney); *Ness v. Marshall*, 660 F.2d 517 (3d Cir. 1981) (city solicitor and two assistant city solicitors).

Because the Court finds Eddy to be a policymaker, the *Pickering/Connick* balancing becomes less difficult. The Court outlined three factors to be considered in balancing the relevant interests: (1) the degree to which the speech disrupts close working relationships; (2) the time, place, and manner of the speech; and (3) the context in which the dispute arose. *Connick v. Myers*, 461 U.S. at 151-154. In analyzing Eddy's remarks in conjunction with his sensitive, confidential position representing the AG, it is clear to this Court that the *Pickering/Connick* balancing test falls decidedly on the side of Defendants. Eddy's speech in this instance was critical of the AG and arose out of an employment dispute regarding office policies as they applied to Eddy. Clearly, the AG in this instance "has a reasonably greater cause for concern

9

when direct public criticism of him comes from one in a confidential position." *Tomalis*, 45 Fed. Appx. at 145.  Therefore, because Eddy was a policymaker, and because the *Pickering/Connick* balancing of interests weighs significantly in favor of the Defendants, Eddy's First Amendment claim fails as a matter of law.

V.   CONCLUSION

Based on the foregoing, the Court will grant the motion for summary judgment in favor of Defendants on Plaintiff's claim made pursuant to  42 U.S.C. § 1983 alleging  a violation of his rights under the First Amendment.  An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:      Joseph H. Chivers, Esquire
         312 Boulevard of the Allies
         Suite 600
         Pittsburgh, PA 15222

         Mary Lynch Friedline , Esquire
         Office of Attorney General
         Fifth Floor, Manor Complex
         564 Forbes Avenue
         Pittsburgh, PA 15219